UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ANDRE HARRIS,<br><br>    Defendant. | Case No. 17-20136-2<br>Honorable Laurie J. Michelson |

**ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [85]**

Andre Harris pleaded guilty to multiple counts of a superseding indictment, including conspiracy to commit wire fraud, possession of access devices, and aggravated identity theft. (ECF No. 36.) While on probation for other fraud-type offenses, Harris was involved with purchasing stolen credit card accounts from illegal "dump" websites and skimming credit card accounts and then using the stolen accounts to buy goods for his own personal use. (ECF No. 50.) He then, unfortunately, continued this conduct while on bond. (*Id*. at PageID.127.) He was sentenced to 96-months imprisonment. (ECF No. 66.) After serving 41 months, Harris is now seeking a sentence reduction under 18 U.S.C. § 3582. (ECF No. 85.) He is worried about being infected with the highly contagious novel coronavirus. The virus causes a respiratory disease that can result in serious illness or death. But Harris' managed hypertension does not constitute an extraordinary and compelling circumstance that warrants this relief. The motion is DENIED.

**I.**

Understandably, Harris "[does not] want to pass from COVID-19." (ECF No. 85, PageID.347.) He is presently housed at Yazoo City United States Penitentiary in Mississippi. (*Id*.) This facility has seen its fair share of coronavirus cases. They are presently reporting 22 positive

inmate cases, 7 positive staff case, and 1 inmate death, as well as 67 inmates and 12 staff members who have recovered. *See COVID-19*, Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Oct. 1, 2020). Harris believes he may be transferred to Federal Correctional Institution Marianna by October 31, 2020. (ECF No. 85, PageID.347.) Marianna has 2 reported positive inmate cases, and 11 positive staff cases. https://www.bop.gov/coronavirus (last visited Oct. 1, 2020). The CDC has issued guidance acknowledging that detention facilities "present . . . unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control and Prevention, https://perma.cc/W3JW-4UQX20. "These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing)." *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020). As the Sixth Circuit has summarized, the "COVID-19 virus is extremely contagious and conditions favor its more rapid transition in detention or correctional facilities." *United States v. You*, No. 20-5390, 2020 U.S. App. LEXIS 12991, at *3 (6th Cir. 2020) (order).

The CDC also advises that people with hypertension "might be at an increased risk for severe illness from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://perma.cc/Q2FJ-QJAR. Harris says he has been diagnosed with hypertension since being incarcerated and has been prescribed Amlodipine. (ECF No. 85, PageID.357.) His medical records confirm this diagnosis in 2019. (ECF No. 91-2, PageID.495.) While in prison, Harris notes that he has struggled with the loss of some relatives. (ECF No. 85,

PageID.358.) Despite these challenges, he has made efforts to set himself up for success outside of prison, including taking numerous classes and earning his GED. (*Id.*) He says he has a job lined up, a place to stay, and children who need him for support and guidance. (*Id.*) So for all of these reasons, Harris believes he is entitled to compassionate release. The Government opposes the request. (ECF No. 90.)

**II.**

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). As amended by the First Step Act, and upon exhaustion of administrative remedies or the lapse of 30 days from the receipt by the warden of a request for compassionate release, 18 U.S.C. § 3852(c)(1)(A)(i) allows a court to reduce an inmate's sentence if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under § 3553(a) warrant a reduction.

**A.**

The Sixth Circuit has made clear that the exhaustion requirement is mandatory. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). The Government argues that "Harris did not pursue a request through the BOP prior to filing his motion." (ECF No. 90, PageID.384.) But they provide no supporting affidavit or other evidence to indicate what steps the prison took to reach this conclusion. Harris, by contrast, represents that he sent a letter to the warden on August 5, 2020 regarding compassionate release and has not heard back. (ECF No. 85, PageID.358.) As 30 days

3

have now passed, and the Government does not provide a compelling argument to the contrary, the Court will find the exhaustion requirement satisfied.

### B.

Harris must also demonstrate "extraordinary and compelling reasons" to justify his early release.

Congress has not further defined "extraordinary and compelling." But the commentary to U.S.S.G. § 1B1.13, adopted before the enactment of the First Step Act, does. Application Note 1 identifies the following "extraordinary and compelling" circumstances: (A) terminal illness diagnoses or serious medical, physical, or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) family related circumstances. U.S.S.G. § 1B1.13 cmt n.1(A)-(C). Then there is a catch-all in section (D), titled "Other Reasons" where a defendant's case presents an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt n.1(D). None apply to Harris' situation.

First, Harris is only 29 years old and has served less than 50% of his sentence (not including good time credits). Second, his hypertension is not terminal and, to the contrary, is being managed with medication. (ECF No. 91-2.) There is nothing in the record to suggest that Harris is unable to care for himself, nor would the Court expect this to be the case with managed hypertension. *See, e.g.*, *United States v. Terry*, No. 11-20752, 2020 WL 4581691, at *4 (E.D. Mich. Aug. 10, 2020) (finding that hypertension was not considered a serious condition that substantially diminished defendant's ability to provide self-care or and from which he was not expected to recover); *United States v. Santos*, No. 18-CR-20719-3, 2020 WL 5095527, at *4 (E.D. Mich. Aug. 28, 2020)

4

(finding that "even if Defendant's conditions put him at an elevated risk of contracting COVID-19 or experiencing symptoms therefrom," the defendant's well-managed hypertension did not qualify as a condition that substantially diminishes his ability to provide self-care). This is true even if Harris' hypertension put him at an elevated risk of contracting COVID-19 or experiencing symptoms therefrom. *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020).

Sadly, three of Harris' family members have died while Harris has been incarcerated. He also has children who are missing his support and guidance. But these are life tragedies common to many inmates and not what the Sentencing Commission defined as extraordinary and compelling reasons for release. Rather, the Commission identifies only "The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt n.1(C). And while Harris' efforts to better himself are commendable, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for purposes of the policy statement. U.S.S.G. § 1B1.13 cmt n.3.

So that leaves the catchall of "other reasons." Courts have found that the novel coronavirus combined with other factors can satisfy the catch-all provision. *See, e.g.*, *Loyd v. United States*, No. 15-20394-1, 2020 WL 2572275, at *2 (E.D. Mich. May 21, 2020); *United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *6 (E.D. Mich. May 15, 2020); *United States v. Oliver*, No. 17-20489, 2020 WL 2768852, at *6 (E.D. Mich. May 28, 2020); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020). As another court in this district explained, "[t]he common features of the recent cases where inmates have been granted judicial

5

relief on motions for compassionate release due to the pandemic are . . . properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic" or "where the defendants had severe medical conditions which placed them at high risk of coronavirus infection, were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020).

But speculative concern about catching COVID is not enough. *See United States v. Raia*, 954 F.3d 594, 2020 WL 1647922, at *2 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Urrabazo-Maldonado*, No. 20-3727, 2020 U.S. App. LEXIS 29873, at *4 (6th Cir. 2020) (unpublished) ("An inmate's generalized fear of contracting Covid-19, without more, does not rise to the level of an extraordinary and compelling circumstance."); *United States v. Peaks*, No. 16-20460, 2020 U.S. Dist. LEXIS 80397, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) (a "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission."). And while Harris is at a facility with a significant number of coronavirus cases, he may soon be moved to a different facility that currently is reporting a lower rate of positive prisoner cases. True, the amount of testing being done at these facilities has not been provided and it could well be minimal, but the Government has detailed the substantial efforts being made by the BOP to enhance the safety of the inmates and staff. (ECF No. 90.)[1] And the Government further advises

---

[1] The BOP website appears to indicate that 625 inmates at Yazoo City USP have completed tests and another 274 inmates have tests pending, and 138 inmates have been tested at Marianna. *COVID-19*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 1, 2020).

that Harris was recently tested (in anticipation of his transfer to Marianna) and the results were negative. (ECF No. 90, PageID.387; ECF No. 91-2, PageID.489.) Harris is only 29 years old, and his only identified medical condition is being treated and managed with medication. He has "not established that his ongoing confinement poses a sufficiently serious danger to his health to warrant immediate release." *United States v. Ewings*, No. 17-20178, 2020 U.S. Dist. LEXIS 148291, at *9 (E.D. Mich. Aug. 17, 2020) (denying motion for compassionate release for inmate with prediabetes and hypertension that was "fairly controlled."); *see also United States v. Allen*, 15-cr-00139, 2020 U.S. Dist. LEXIS 170925, at *13 (M.D. Tenn. Sept. 17, 2020) (holding that a diagnosis of hypertension, without more, does not constitute extraordinary and compelling reasons for release) (collecting cases).

### III.

Because Harris has not demonstrated extraordinary and compelling reasons to reduce his sentence to time served, the Court need not address his dangerousness or the 3553(a) factors. Harris' motion for compassionate release (ECF No. 85) is DENIED WITHOUT PREJUDICE.

But given the non-violent nature of Harris' underlying offenses, his lack of any serious disciplinary infractions the past few years, and the programing he has completed while in prison, the Court will recommend to the BOP that Harris be considered for release to home confinement at the earliest possible date.

IT IS SO ORDERED.

Dated: October 5, 2020

                                                  s/Laurie J. Michelson
                                                  LAURIE J. MICHELSON
                                                  UNITED STATES DISTRICT JUDGE